UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



EDWARD J. VASQUEZ, )
)
Plaintiff, )
)
v. ) Civil Action No. 1:10-cv-216
)
POTOMAC HOSPITAL, INC., )
)
Defendant. )
)

### MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b). Plaintiff's Amended Complaint alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, Plaintiff alleges that Defendant Sentara Potomac Hospital Corporation discriminated against Plaintiff based on race, subjected Plaintiff to a hostile work environment and sexual harassment, and retaliated against Plaintiff after he initiated an internal complaint process with the Defendant's Human Resources Department and filed a complaint with the Equal Employment Opportunity Commission (EEOC).

From January 2006 to May 2007, Defendant employed Plaintiff part-time as an unarmed hospital security officer. During the
.

same period, Plaintiff was also serving as a military policeman in the United States Marine Corps.

Plaintiff alleges that during the course of his employment he was subjected to discrimination based on race on multiple occasions. Plaintiff claims that a co-worker called him a "dirty wetback" on more than one occasion in 2006, and that a different co-worker had accused Plaintiff of being a racist.

Plaintiff alleges that Defendant subjected him to a hostile work environment and sexual harassment during his employment. In April 2006, Plaintiff received a handwritten note that contained sexual subject matter from Kim Cash, a nurse from a different department of the hospital. In the note, Ms. Cash asked Plaintiff if he was "just teasing" and concluded by saying "I'm fine if your [sic] not comfortable. I can't quite tell if your [sic] interested so far or not." In May 2006, Plaintiff received another note from 19-year-old patient transporter Jennifer Lewko in which she stated that Plaintiff owed her a backrub and would receive a kiss in return. The note also stated that she was "JP" (just playing) and had a "BF" (boyfriend). One or two days later, Ms. Lewko wrote Plaintiff a second note again mentioning a backrub and a kiss and also repeating that she was just playing and trying to be friends. Plaintiff did not respond to Ms. Lewko's note. Ms. Lewko later called the security office several times looking for Plaintiff, but stopped calling when security

supervisor Michael Snow told her to cease calling. In August 2006, Ms. Cash and Ms. Lewko both stopped working at Potomac Hospital.

Several co-workers and supervisors of Plaintiff have stated that Plaintiff was flirtatious with female employees and would frequently initiate conversations with Potomac Hospital's minor junior auxiliary volunteers (called "candy stripers"). On April 5, 2007, Plaintiff received a written warning after a 15-year-old candy striper informed Potomac that Plaintiff's behavior was flirtatious and inappropriate. Two weeks later, Plaintiff complained to Potomac's Human Resources department about the notes from Ms. Lewko and Ms. Cash.

Finally, Plaintiff alleges that Defendant engaged in numerous acts of retaliation including verbal and written counseling, enforcing the uniform requirement, changing his schedule without notice, and threats of termination stemming from Plaintiff's complaints of wrongdoing. In April of 2006, Tim Bowers replaced John Chander as Director of Security at Potomac. Mr. Bowers then learned that Plaintiff was not adhering to the company's uniform requirement. All security guards were required to wear company attire to be easily discernable to visitors and to appear professional. In May 2006, Mr. Bowers informed Plaintiff that Plaintiff needed to adhere to the uniform requirement and that Plaintiff could no longer wear novelty

cartoon ties to work. Plaintiff responded that he had not received a company polo and did not think any were available in his size. Mr. Bowers then gave Plaintiff the option of wearing an available company polo or slacks, a dress shirt, and a company-issued tie. Plaintiff chose to wear the company polo.

Plaintiff's responsibilities as a security officer included making rounds and defusing tense situations involving hospital visitors in a nonphysical way. Security officers were not permitted to use force or physically search visitors or patients. If a situation could not be defused, the security officer was expected to call local law enforcement. In late 2006, Plaintiff responded to a situation outside of a hospital room in which one family member claimed that another had a knife. Plaintiff then conducted a physical search of the visitor who allegedly had a knife. In response, Mr. Bowers verbally counseled Plaintiff that he was not permitted to physically search visitors. A few months later, Plaintiff again physically searched a hospital visitor who had a bulge underneath his shirt. Mr. Bowers verbally counseled Plaintiff a second time by telling Plaintiff that it was inappropriate to physically search hospital visitors and warning him not to do so in the future.

In early 2007, Mr. Bowers learned that Plaintiff had been seen attempting to perform air traffic control functions on the medical helicopter landing zone. Security officers are not

4

permitted to be present in the helicopter landing area. Consequently, Mr. Bowers verbally counseled Plaintiff that Plaintiff was not permitted to engage in air traffic control activities and warned him against future violations.

In early April 2007, Security Supervisor Snow altered the previously published schedule for May because Potomac lost two security officers. The May schedule and revised May schedule were drafted to accommodate Plaintiff's military schedule. However, Plaintiff's military schedule had also changed, creating conflicts with his new shifts at Potomac. Plaintiff discussed the situation with his supervisors, and they changed his shifts back to the originally scheduled times.

On April 18, 2007, Plaintiff submitted a grievance to Defendant's Human Resources department. Plaintiff completed an EEOC intake questionnaire in May 2007.

Plaintiff submitted a resignation letter on May 19, 2007 that designated June 4, 2007 as his last day. After learning that Plaintiff had engaged in negative communications with other employees, Mr. Bowers and the Human Resources Director decided to accept Plaintiff's resignation as effective on May 28, 2007, but Potomac Hospital paid Plaintiff through June 4, 2007.

On September 26, 2007, Plaintiff filed his Charge of Discrimination with the EEOC alleging sex discrimination and retaliation.

Plaintiff filed the present suit on March 8, 2010, and filed his Amended Complaint on May 28, 2010.

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The inferences drawn from the underlying facts must be viewed in a light that is most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rely merely on the allegations in his pleading, but instead must present specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is no genuine issue for trial if the record taken as a whole could not induce a rational trier of fact to find for the non-moving party. Matsushita, 475 U.S. at 587.

Title VII of the Civil Rights Act states that it is an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2(a)(1). Before a plaintiff will have standing to file a suit under Title VII, the plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with

the EEOC. See § 2000e-5(f)(1); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The EEOC charge determines the scope of the plaintiff's ability to file a civil suit. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). A plaintiff can only maintain "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" in a subsequent Title VII lawsuit. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Thus, a claim brought in a subsequent lawsuit will generally be barred if the EEOC charge alleges discrimination on one basis while the subsequent civil suit alleges discrimination on a different basis. Jones, 551 F.3d at 300. A plaintiff's failure to exhaust the administrative remedies available will deprive the federal courts of subject matter jurisdiction over the claim in a later suit. Id.

Plaintiff's EEOC charge alleges that Defendant discriminated against him based on sex and retaliation. Plaintiff did not check the box labeled "RACE" in the space for categorizing the alleged discrimination, nor did he make any reference to race in his description of the discriminatory acts. Plaintiff did not raise race discrimination in the EEOC charge, and an investigation of race discrimination could not reasonably be expected to occur in response to an EEOC charge that only

mentioned sex discrimination and retaliation. The Plaintiff has failed to exhaust his administrative remedies in regard to his claim of discrimination based on race. Consequently, the Court lacks subject matter jurisdiction over Plaintiff's race discrimination claim, and the race discrimination claim must be dismissed.

With respect to Plaintiff's hostile environment and sexual harassment claims, Plaintiff was also required to file an EEOC charge before filing a Title VII suit. Bryant, 288 F.3d at 132. Title VII delineates two possible limitation periods during which an aggrieved party may file a discrimination charge with the EEOC. 42 U.S.C.A. § 2000e-5(e)(1). Normally a charge must be filed within 180 days after the alleged unlawful employment practice. § 2000e-5(e)(1). However, when an individual has instituted discrimination proceedings in a deferral state-a locality with a state or local agency that can grant or seek relief from the alleged discriminatory practice-that individual has 300 days from the occurrence of the alleged unlawful employment practice to file a charge with the EEOC. § 2000e-5(e)(1). Virginia is a deferral state, so a prospective plaintiff has 300 days from the last act of discrimination to file a charge with the EEOC. Edelman v. Lynchburg Coll., 300 F.3d 400, 404 (4th Cir. 2002). A claim regarding discrete discriminatory acts that occurred outside of the 300 day

statutory period is time barred. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 105 (2002). When a court applies the 300 day limitations period to a Title VII claim that seeks to recover on a hostile work environment theory, the claim is time barred if all of the component acts creating the hostile work environment fall outside of the statutory time period. <u>See id.</u> Thus, Plaintiff must prove that at least one event of sexual harassment occurred within the statutory limitations period for his claim to be timely.

Both Plaintiff's EEOC Intake Questionnaire and grievance letter to Potomac's Human Resources department specifically state that Plaintiff was sexually harassed from March 2006 to May or June 2006. Ms. Cash and Ms. Lewko, the alleged offenders, wrote Plaintiff personal notes in April and May of 2006. In Plaintiff's Memorandum in Support of Response and Objection to "Defendant's Rule 56 Motion for Summary Judgment", however, Plaintiff claims that he was actually subjected to sexual harassment from January 2006 to August 2006, when Ms. Lewko and Ms. Cash left the employ of Potomac Hospital.

The Fourth Circuit has held that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 960 (4th Cir. 1984). The last instances of alleged

sexual harassment about which Plaintiff has provided specific facts occurred in May or June 2006. In Plaintiff's Response to Defendant's Summary Judgment Motion, Plaintiff makes unsupported allegations of alleged sexual harassment occurring through August 2006. Plaintiff's new end date cannot create an issue of fact regarding the timeliness of his charge of discrimination. Even if the harassment continued until Ms. Lewko and Ms. Cash left their jobs with Potomac in August 2006, Plaintiff did not file a formal charge of discrimination with the EEOC until September 26, 2007, well outside the statutory limitations period for filing the charge of discrimination. Consequently, Plaintiff is barred from bringing the sexual harassment claims, and they must be dismissed.

Plaintiff also complains of hostile workplace and generalized "harassment" unrelated to sex or race. Title VII does not create a cause of action based on generalized hostility. See Ziskie v. Mineta, 547 F.3d 220, 226 (4th Cir. 2008) (observing that "harassment because of personality conflicts will not suffice [to generate a trible issue]. Some persons, for reasons wholly unrelated to race or gender, manage to make themselves disliked."). While Plaintiff may feel that certain co-workers or supervisors treated him with hostility, he has not demonstrated that such hostile acts actually occurred or that any such conduct was based on Plaintiff's sex or race.

Additionally, Plaintiff complains that Defendant retaliated against him for his complaints of harassment and for the manner in which he performed his security duties. To make out a prima facie case of retaliation, an individual must prove that (1) he engaged in protected activity, (2) he was subjected to a materially adverse employment action, and (3) the adverse employment action was causally connected to the protected activity. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004). When a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the defendant carries the burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons cited by defendant were a pretext for the discriminatory conduct. Id. Each instance of retaliatory adverse employment action is a separate actionable unlawful employment practice. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Hence, an alleged retaliatory action that occurred more than 300 days before the filing of the EEOC charge is time barred. Edelman v. Lynchburg Coll., 300 F.3d 400, 404 (4th Cir. 2002).

Plaintiff states that Mr. Bowers's enforcement of the uniform requirement in May 2006 was in fact an act of retaliation against Plaintiff. The matter was ultimately resolved when

Plaintiff received a correctly sized company polo shirt in October 2006. As stated above, Plaintiff did not file his charge of discrimination alleging retaliation with the EEOC until September 2007. Consequently, Plaintiff's claim of retaliation based on enforcement of the uniform requirement is time barred because he did not file his charge within the statutory limitations period.

Plaintiff also claims that Defendant retaliated against him in violation of Title VII by engaging in verbal and written counseling. Title VII protects employees against discrimination from engaging in legally protected activity. The statute protects any employee who has "opposed any practice made an unlawful employment practice by this subchapter, or...made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Notably, the statute does not provide legal protection to an employee who has performed their duties in a manner that is objectionable to the employer. The Fourth Circuit has held that a complaining employee "is not thereby insulated from the consequences of insubordination or poor performance." Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008).

Plaintiff claims that he was retaliated against by virtue of verbal counseling that he received. Specifically, Plaintiff states that the counseling occurred because Plaintiff conducted

two searches of hospital visitors, aided in a helicopter landing, and thoroughly investigated a security incident. The Director of Security then instructed Plaintiff to refrain from searching visitors or assisting in helicopter landings, as such conduct violated hospital policies. The Director also disagreed with the manner in which Plaintiff had performed an investigation and counseled him about his methods. Plaintiff suffered no other consequences in addition to the instances of counseling. Because Plaintiff did not engage in legally protected activity when he performed his duties in a manner that his supervisor found objectionable, his claim of retaliation based on the verbal and written counseling must fail as a matter of law.

Finally, Plaintiff argues that Defendant retaliated against Plaintiff by "terminating" him when Potomac chose to accept Plaintiff's resignation as effective one week early. Other circuits have held that an acceptance of an employee's resignation prior to the employee's intended last day does not convert a resignation into a termination. See Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 64 n.4 (5th Cir. 1980) (finding that the company's acceptance of an employee's resignation effective immediately upon receipt of her two weeks notice did not constitute a discharge); cf. Curby v. Solutia, Inc., 351 F.3d 868, 872 (8th Cir. 2003) ("An employee cannot submit a resignation and then claim the employer's acceptance of the

resignation is an adverse employment action.").

Plaintiff submitted his resignation on May 19, 2007. On May 28, Potomac opted to accept his resignation as effective that day, but Potomac paid him for the remainder of his requested notice period. Plaintiff resigned of his own accord, and his argument that Potomac's early acceptance of the resignation was retaliatory termination is without merit. Even if Potomac's decision somehow constituted materially adverse conduct that was causally connected to Plaintiff's grievance procedure, Potomac has provided a legitimate and non-discriminatory reason for its act. Plaintiff's supervisor and the VP of Human Resources wanted to avoid lowering other employees' morale through interactions with the disgruntled Plaintiff. Plaintiff has failed to rebut Defendant's legitimate reason.

To the extent that Plaintiff is attempting to raise a constructive discharge claim, Plaintiff has failed to establish the objectively intolerable working conditions necessary to support the claim. See Whitten v. Fred's, Inc., 601 F.3d 231, 248 (4th Cir. 2010). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).

For the foregoing reasons, Defendant is entitled to summary

judgment.

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
October 8, 2010